# STATE OF MICHIGAN

# COURT OF APPEALS

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

BRAYCE BRANTLEY,

        Defendant-Appellant.

UNPUBLISHED
January 5, 2017

No. 327811
Wayne Circuit Court
LC No. 14-004311-01-FC

---

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

KIMANI JAMAL STOUDEMIRE,

        Defendant-Appellant.

No. 328256
Wayne Circuit Court
LC No. 14-005491-01-FC

---

Before: SERVITTO, P.J., and STEPHENS and RONAYNE KRAUSE, JJ.

PER CURIAM.

Defendants Brayce Brantley and Kimani Stoudemire were tried jointly, before separate juries. One jury convicted defendant Brantley of first-degree premeditated murder, MCL 750.316(1)(a); first-degree felony murder, MCL 750.316(1)(b); first-degree home invasion, MCL 750.110a(2); two counts of assault with intent to commit murder, MCL 750.83; felon in possession of a firearm, MCL 750.224f; and possession of a firearm during the commission of a felony (felony-firearm), MCL 750.227b. The other jury convicted defendant Stoudemire of first-degree felony murder, two counts of assault with intent to commit murder, and first-degree home invasion. The trial court sentenced Brantley to life imprisonment without parole for each murder conviction, along with concurrent prison terms of 17-1/2 to 40 years for the home invasion conviction, 28 to 50 years for each assault conviction, and 6 to 10 years for the felon-in-possession conviction, to be served consecutive to a two-year term of imprisonment for the felony-firearm conviction. The court sentenced Stoudemire, who was a 17-year-old juvenile at the time of the offense, to concurrent prison terms of 35 to 60 years for the first-degree murder conviction, 18 to 30 years for each assault conviction, and 7 to 20 years for the home invasion

-1-

conviction. Defendant Brantley appeals as of right in Docket No. 327811, and defendant Stoudemire appeals as of right in Docket No. 328256. We affirm defendants' convictions, but remand for correction of defendant Brantley's presentence investigation and judgment of sentence to reflect one conviction of first-degree murder, supported by two different theories.

Defendants' convictions arise from a home invasion and shooting at an apartment building in Detroit on March 6, 2014. According to the prosecutor's theory of the case, defendants Brantley and Stoudemire accompanied John Stevenson to an apartment for the purpose of robbing Marquis Walker, who sold marijuana and was a competitor of defendants' friend, Dwan Wilson. While at the apartment, shooting erupted during which Walker was wounded, Walker's fiancée Jenny Vallis was wounded and paralyzed, and Walker's friend Austin Freeman was killed. Witnesses identified Brantley as the shooter. Stevenson pleaded guilty to second-degree murder and testified against Brantley and Stoudemire at their joint trial.

## I. DOCKET NO. 327811 (DEFENDANT BRANTLEY)

### A. GREAT WEIGHT OF THE EVIDENCE

Defendant Brantley first argues that he is entitled to a new trial because the jury's verdicts are against the great weight of the evidence. "To preserve a great-weight claim, a party must move for a new trial in the trial court." *People v Cameron*, 291 Mich App 599, 617; 806 NW2d 371 (2011). Brantley did not raise this issue in a motion for a new trial in the trial court. Therefore, this issue is unpreserved. An unpreserved claim challenging whether a verdict is against the great weight of the evidence is reviewed for plain error affecting substantial rights. *People v Musser*, 259 Mich App 215, 218; 673 NW2d 800 (2003).

In *Musser*, 259 Mich App at 219, this Court explained:

> The test to determine whether a verdict is against the great weight of the evidence is whether the evidence preponderates so heavily against the verdict that it would be a miscarriage of justice to allow the verdict to stand. *People v McCray*, 245 Mich App 631, 637; 630 NW2d 633 (2001). "Conflicting testimony, even when impeached to some extent, is an insufficient ground for granting a new trial." *People v Lemmon*, 456 Mich 625, 647; 576 NW2d 129 (1998). "[U]nless it can be said that directly contradictory testimony was so far impeached that it 'was deprived of all probative value or that the jury could not believe it,' or contradicted indisputable physical facts or defied physical realities, the trial court must defer to the jury's determination." *Id*. at 645–646 (citation omitted).

Brantley acknowledges that the testimony of witnesses Wilson and Stevenson was incriminating, but he argues that these witnesses had a motive to lie and that their testimony conflicted in some respects. Wilson and Stevenson were consistent in identifying Brantley as both an active participant in the planning of the robbery, and as the person who was armed while going to and entering Walker's apartment. Their testimony differed regarding details such as the extent to which Wilson participated in the planning, the extent of Wilson's knowledge regarding the sale of other marijuana in the building, and how long Stevenson and the others had been in

Wilson's apartment before going to Walker's apartment. Despite these inconsistencies, their testimony was not so far impeached that it "was deprived of all probative value or that the jury could not believe it." *Musser*, 259 Mich App at 219. Instead, the conflicts in the testimony presented ordinary questions of credibility for the jury to decide. The jury was free to believe all, none, or part of the witnesses' testimony. *People v Perry*, 460 Mich 55, 63; 594 NW2d 477 (1999). Moreover, apart from the credibility of Stevenson and Wilson, Walker positively identified Brantley as the person who shot him and the others in his apartment. The testimony does not preponderate so heavily against the jury's verdicts that it would be a miscarriage of justice to allow the verdicts to stand. Accordingly, we reject this claim of error.

## B. IDENTIFICATION TESTIMONY

Defendant Brantley next argues that the trial court erred in denying his motion to suppress Walker's identification testimony. Brantley argues that Walker's in-court identification was the product of an unduly suggestive pretrial identification procedure in which Walker, after having identified Brantley in a black and white photographic array, was then shown a color photograph of Brantley, and then another colorized photographic array. Brantley contends that this procedure denied him due process and a fair trial.

"The trial court's decision to admit identification evidence will not be reversed unless it is clearly erroneous." *People v Harris*, 261 Mich App 44, 51; 680 NW2d 17 (2004). "Clear error exists if the reviewing court is left with a definite and firm conviction that a mistake has been made." *Id*. "Issues of law relevant to a motion to suppress [identification evidence] are reviewed de novo." *People v McDade*, 301 Mich App 343, 356; 836 NW2d 266 (2013).

Photographic identification procedures can violate a defendant's due process rights if they are so impermissibly suggestive as to give rise to a substantial likelihood of misidentification. *People v Gray*, 457 Mich 107, 111; 577 NW2d 92 (1998). A lineup may be unduly suggestive if a witness is shown a group of people but the defendant is singled out in some fashion. *Id*. A photographic array is not deemed to be suggestive if "it contains some photographs that are fairly representative of the defendant's physical features and thus sufficient to reasonably test the identification." *People v Kurylczyk*, 443 Mich 289, 304; 505 NW2d 528 (1993) (quotations marks omitted). Mere differences in the composition of photographs, in the physical characteristics of the individuals photographed, or in the clothing worn do not render a lineup impermissibly suggestive, unless they substantially distinguish the defendant from other lineup participants. *Id*. at 304-305, 312. Such differences relate only to the weight of the identification and not to its admissibility. *People v Hornsby*, 251 Mich App 462, 466; 650 NW2d 700 (2002).

In the instant case, Brantley does not contend that the other persons in either photo array were not fairly representative of his physical features. And, while Walker was shown a color photograph of Brantley, this occurred after Walker initially identified Brantley in a black and white photo array. Walker did not testify that Detective White assisted, suggested, or persuaded Walker to identify Brantley, or suggested that Brantley was the perpetrator. Walker testified at trial that he was shown a black and white photographic array and that the photograph of Brantley looked like the man who had shot him. He was then shown the same photograph of Brantley, in

color, and again identified him as the shooter. Walker was then shown a different photo array, again containing Brantley's photograph, and again he identified Brantley.

At the suppression hearing, White testified that Walker was shown the six-person or "six-pack" black and white photo array, selected Brantley's photo, circled it, wrote "it looks like him" on the array, and initialed it. White denied that he told or suggested to Walker which photograph to select. White testified that after writing up paperwork, he took a color copy of the photograph, showed it to Walker, and told him, "See this is the colored version of that same photo that you said looked like him." Walker then told White that he was one hundred percent positive that Brantley was the person involved. White then showed Walker another "six-pack" array, in color, with the same photo "to show the photo again" and Walker again chose Brantley.

This testimony demonstrates that, regardless of White's actions in confirming Walker's initial choice, Walker affirmatively chose Brantley from the initial, non-suggestive array, in a procedure that had no apparent irregularities. Brantley does not challenge the suggestiveness of this initial identification procedure, which would have been admissible even if the trial court found a problem with the subsequent reaffirmation. Even though Walker appeared more positive in the second identification, Walker did not hesitate in his initial identification. In addition, even if an identification procedure can be considered suggestive, "a suggestive lineup is not necessarily a constitutionally defective one." *Kurylczyk*, 443 Mich at 306. Even if the trial court found that White provided commentary to Walker as he showed Walker the larger single photograph, this comment was not "impermissibly" suggestive because it did not give rise "to a substantial likelihood of misidentification" under the totality of the circumstances. *Id.* When evaluating the likelihood of misidentification, factors that a court will consider are:

> the opportunity of the witness to view the criminal at the time of the crime, the witness' degree of attention, the accuracy of the witness' prior description of the criminal, the level of certainty demonstrated by the witness at the confrontation, and the length of time between the crime and the confrontation. [*Id.* (citation omitted).]

Walker had a clear view of Brantley, and spoke with the defendants before the shooting began. He did not express any uncertainty when choosing Brantley from the initial array and Detective White met with Walker approximately one month after the offense. Given these factors, the trial court did not err in finding that Walker's identification of Brantley was not the product of an unduly suggestive identification procedure, particularly where Walker had already identified Brantley in the initial photographic array, which Brantley does not contend was impermissibly suggestive.

## C. ADMISSION OF CODEFENDANT STOUDEMIRE'S STATEMENT

Defendant Brantley next argues that the introduction of testimony by Dwan Wilson that co-defendant Stoudemire told Wilson that Brantley "went in there shooting" violated Brantley's constitutional right of confrontation, inasmuch as Stoudemire did not testify. Because Brantley did not raise this constitutional objection in the trial court, this issue is unpreserved. *People v Asevedo*, 217 Mich App 393, 398; 551 NW2d 478 (1996). We review unpreserved claims of

constitutional error for plain error affecting substantial rights. *People v Carines*, 460 Mich 750, 763-764; 597 NW2d 130 (1999).

Wilson testified that he spoke to Stoudemire two or three weeks after the shooting. Stoudemire told him that the three knocked on the victims' apartment door, someone kicked open the door, and Brantley went "in there shooting." Stoudemire also told Wilson that Stoudemire entered the apartment, but he "didn't see nothing" so he left the apartment. Stoudemire's statements qualified for admission under the hearsay exception for statements against interest, MRE 804(b)(3),[1] because the statements tended to subject Stoudemire to criminal liability and was made under circumstances in which a reasonable person in Stoudemire's position would not have made the statements unless the person believed them to be true. However, even if a statement is admissible under MRE 804(b)(3), it must still be excluded if its admission will violate a defendant's right of confrontation.

The Confrontation Clause of the Sixth Amendment guarantees a criminal defendant the right to confront witnesses against him and "bars the admission of testimonial statements by a witness who does not appear at trial unless the witness is unavailable and the defendant had a prior opportunity to cross-examine the witness." *People v Dendel (On Second Remand)*, 289 Mich App 445, 453; 797 NW2d 645 (2010), citing *Crawford v Washington*, 541 US 36, 53-54; 124 S Ct 1354; 158 L Ed 2d 177 (2004). "A pretrial statement is testimonial if the declarant should reasonably have expected the statement to be used in a prosecutorial manner and if the statement was made under circumstances that would cause an objective witness reasonably to believe that the statement would be available for use at a later trial." *Dendel*, 289 Mich App at 453, citing *Crawford*, 541 US at 51-52. The *Crawford* Court explained that "[m]ost of the hearsay exceptions covered statements that by their nature were not testimonial—for example, business records or statements in furtherance of a conspiracy." *Crawford*, 541 US at 56.

Stoudemire's statements to Wilson were not testimonial. Informal statements made to an acquaintance, such as were made here, are nontestimonial because they are not made during any interrogation, formal legal proceeding, or under circumstances that would "indicat[e] that their 'primary purpose' was to 'establish or prove past events potentially relevant to later criminal

---

[1] MRE 804(b)(3) provides the following exception to the general rule prohibiting the admission of hearsay:

> *Statement against interest.* A statement which was at the time of its making so far contrary to the declarant's pecuniary or proprietary interest, or so far tended to subject the declarant to civil or criminal liability, or to render invalid a claim by the declarant against another, that a reasonable person in the position of the declarant would not have made the statement unless the person believed it to be true. A statement tending to expose the declarant to criminal liability and offered to exculpate the accused is not admissible unless corroborating circumstances clearly indicate the trustworthiness of the statement.

prosecution.' " *People v Taylor*, 482 Mich 368, 378; 759 NW2d 361 (2008), quoting *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). Stoudemire's statements to Wilson were made in confidence, not under circumstances such that Stoudemire "should reasonably have expected the statement to be used in a prosecutorial manner." *Dendel*, 289 Mich App at 453; see also *People v Bennett*, 290 Mich App 465, 483; 802 NW2d 627 (2010) ("our Supreme Court has ruled that a statement made to an acquaintance, outside a formal proceeding, is a nontestimonial statement and may be admitted as substantive evidence at trial pursuant to MRE 804(b)(3)"). Accordingly, the admission of Stoudemire's statements did not result in plain error.

## D. BRANTLEY'S JUDGMENT OF SENTENCE

Defendant Brantley next argues that the trial court erred when it entered a judgment of sentence reflecting two convictions of first-degree murder, and two sentences of life imprisonment without parole, resulting from the death of a single victim. We agree.

Although the jury found Brantley guilty of both first-degree premeditated murder and first-degree felony murder, because the two convictions arise from the death of a single victim, they violate the double jeopardy protection against multiple punishments for the same offense. *People v Long*, 246 Mich App 582, 588; 633 NW2d 843 (2001). Accordingly, we remand for modification of Brantley's judgment of sentence to specify a single conviction of first-degree murder supported by two theories: premeditated murder and felony murder. *Id.*; *People v Bigelow*, 229 Mich App 218, 220-221; 581 NW2d 744 (1998).

## E. BRANTLEY'S STANDARD 4 BRIEF

Defendant raises additional claims of error in a pro se supplemental brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4. Defendant first contends that prior to trial, the trial court should have determined whether he was competent to stand trial. We disagree.

"The determination of a defendant's competence is within the trial court's discretion." *People v Newton*, 179 Mich App 484, 488; 446 NW2d 487 (1989). An abuse of discretion occurs when the trial court's decision is outside the range of reasonable and principled outcomes. *People v Kammeraad*, 307 Mich App 98, 140; 858 NW2d 490 (2014).

A criminal defendant is presumed competent to stand trial absent a showing that "he is incapable because of his mental condition of understanding the nature and object of the proceedings against him or of assisting in his defense in a rational manner." MCL 330.2020(1). The issue of a defendant's competence to stand trial may be raised by either party or the court. MCL 330.2024. A trial court has the duty of raising the issue of incompetence where facts are brought to its attention which raise a "bona fide doubt" as to the defendant's competence. *People v Harris*, 185 Mich App 100, 102; 460 NW2d 239 (1990). Further, as set forth in MCR 6.125(B):

> The issue of the defendant's competence to stand trial or to participate in other criminal proceedings may be raised at any time during the proceedings against the defendant. The issue may be raised by the court before which such proceedings

are pending or being held, or by motion of a party. Unless the issue of defendant's competence arises during the course of proceedings, a motion raising the issue of defendant's competence must be in writing. If the competency issue arises during the course of proceedings, the court may adjourn the proceeding or, if the proceeding is defendant's trial, the court may, consonant with double jeopardy considerations, declare a mistrial.

Defendant asserts that he has a documented history of mental illness and had been in special education in school and advised his defense counsel of the same. However, there is no indication that defense counsel brought this to the attention of the court or that defendant in any way displayed behavior that would make the trial court question his competency. Moreover, defendant has directed this Court to no authority suggesting that a history of mental illness or participation in a school's special education program automatically raises questions concerning a defendant's competency to stand trial. Thus, defendant has failed to overcome the presumption that he was competent to stand trial and there has been no demonstration that he was denied his constitutional right to a fair trial on this basis.

Defendant next claims he was denied an unbiased and an impartial jury due to the fact that six jurors on his panel disclosed that they had close friends or family members in the legal profession or law enforcement. We disagree.

A criminal defendant has a constitutional right to be tried by an impartial jury, U.S. Const., Am. VI; Const. 1963, art. 1, § 20. The purpose of voir dire, then, is to elicit enough information in order to exclude those who are not impartial from the jury. *People v Tyburski*, 445 Mich 606, 618; 518 NW2d 441 (1994). Jurors are presumed to be impartial and defendant bears the burden of establishing that a juror was not impartial or at least that the juror's impartiality is in reasonable doubt. *People v Miller*, 482 Mich 540, 550; 759 NW2d 850 (2008).

Here, defendant's complaint about the jury is that it contained several people who stated during voir dire that they had close friends or family members that were in law enforcement or the legal profession. Defendant indicates that the relationships raise an inference of prejudice in favor of law enforcement and against him as a criminal defendant. However, defendant has not offered any evidence to demonstrate that he was prejudiced by any of the specific jurors presence on the jury—that is, defendant has offered no evidence to establish that any juror was partial, as is his burden. *Miller*, 482 Mich at 550. The trial judge asked each juror, when it was revealed that they had family or friends associated with law enforcement or the legal profession if the relationship would affect their abilities to be fair and impartial, and each juror replied that it would not. The jurors also took an oath to honestly and truthfully try the case and to deliver their decision according to the laws and evidence of the state.

Moreover, none of the cases cited by defendant are analogous to the case at bar. In *Hughes v United States*, 258 F3d 453 (CA 6 2001), a non-binding federal case, a juror in that defendant's case stated during voir dire that she had a nephew on a police force and knew a couple of detectives and was close to them. When asked by the trial court if the relationships would prevent her from being fair in the case, the juror responded that she did not think she could be fair. The trial court asked, "You don't think you could be fair?", and the juror again answered "No." The juror was then left on the jury panel. The *Hughes* Court stated, "We find. .

. that [the] juror's [] declaration that "I don't think I could be fair," based on her personal relationships with a police officer and police detectives, in a case involving the theft of a federal marshal's firearm and personal property at gunpoint, constituted an express admission of bias." *Id*. at 460. It was only in addressing the district court's conclusion that the juror's statement was ambiguous as to *how* she would be biased that the Hughes Court stated, "It is a clear inference that a person whose nephew is a member of a local police force, and who is "quite close" to a few detectives, would be biased *against* a defendant . . . ." *Id*. at 460.

In *Harris v Housewright*, 697 F2d 202 (CA 8 1982), the petitioner took issue with his counsel's failure to challenge or strike jurors who had relationships "strongly suggestive of pro-prosecutorial bias" due to their relationships with persons in the field of law enforcement. *Id*. at 202. Two of the four jurors that the petitioner identified in that case, however, had close relationships with sheriff's department employees who were involved in the very case being tried, a third was the daughter of the bailiff at trial, and the fourth, who knew deputies from the sheriff's department involved in the case, indicated, when questioned, that if there was doubt between the testimony of an officer and another individual, the badge means something. *Id*. at 207.

Again, defendant has offered no evidence to indicate that any juror was not, in fact, impartial. The fact that some jurors had friends or family members associated with law does not automatically evidence partiality. The record here establishes that questions into these jurors ability to remain unbiased were asked, they took an oath and were fairly instructed on their role as jurors. Defendant has not overcome the presumption of juror impartiality.

Defendant next asserts that the prosecutor engaged in misconduct by inserting irrelevant and prejudicial facts into evidence and impermissibly shifting the burden of proof to defendant. We disagree.

"Generally, a claim of prosecutorial misconduct is a constitutional issue reviewed de novo." *People v Abraham*, 256 Mich App 265, 272–273; 662 NW2d 836 (2003). "The test of prosecutorial misconduct is whether the defendant was denied a fair and impartial trial (i.e., whether prejudice resulted)." *Id*. Issues of prosecutorial misconduct are decided on a case by case basis, and this Court must examine the entire record and evaluate a prosecutor's remarks in context to determine if misconduct occurred. *People v Dobek*, 274 Mich App 58, 64; 732 NW2d 546 (2007).

Defendant contends that the following question posed by the prosecutor to City of Detroit Police Officer Knox was inappropriate:

Based on your experience, your 19 years, have you found that it's uncommon for someone involved in a murder to get rid of the weapon?

The trial court allowed Officer Knox to answer the question ("No, I don't think it's uncommon."), over defense counsel's objection that the question called for speculation and because the officer's past experience was irrelevant to what happened in this matter.

While defendant's argument on this issue is somewhat difficult to decipher, it appears that defendant is arguing that the prosecutor was, in effect, "testifying" that those involved in

murders often get rid of the murder weapon to explain why the weapons recovered from defendant's home were found to be inconsistent with those used in the murder at issue. The prosecutor was not, however, testifying. She was asking Officer Knox a question based on his experience. To the extent that defendant may be arguing that Officer Knox was providing unqualified expert witness testimony, we would note that Officer Knox provided an answer based on his own observations over the years of experience as a police officer and was of a general nature without reference to any technical comparison or scientific knowledge. See, e.g., *Co–Jo, Inc v Strand*, 226 Mich App 108; 572 NW2d 251 (1997).

Moreover, even if this question by the prosecutor was improper, defendant has failed to show that it deprived him of a fair and impartial trial. Eyewitnesses to the shootings identified him as the shooter. Absent the prosecutor's question, then, there was sufficient evidence to convict defendant.

Next, defendant argues that the trial court denied him a fair trial when it refused to reread critical testimony to jurors during their deliberations. As a preliminary matter, we note that defendant failed to object to the trial court's refusal to reread the testimony. Thus, review is denied absent extraordinary or compelling circumstances. *People v Grant*, 445 Mich 535, 546; 520 NW2d 123 (1994).

When a deliberating jury requests to have trial testimony reread, the rereading and the extent of the rereading are within the trial court's discretion. *People v Davis*, 216 Mich App 47, 56; 549 NW2d 1(1996). This Court reviews decisions regarding the rereading of testimony for an abuse of discretion. *Id*. The trial court may order the jury to resume deliberations without the requested review, but the trial court should not foreclose the possibility of later reviewing the requested testimony by other means, such as by having the court reporter read back the testimony. *People v Carter*, 462 Mich 206, 213 n. 10; 612 NW2d 144 (2000); MCR 2.513(P).

The jury sent out several notes after deliberating for only a couple of hours. In one of the notes, the jury asked to see the testimony of witness/victim Marquis Walker and the testimony of witness John Stevenson. The trial court advised:

> Ladies and gentlemen, this was not a long trial. And in order for us to give you anything for you to read would require the court reporter to actually produce a transcript, so we're going to ask that you rely on your collective memories. You have your notes—for those of you who are taking notes. And all 12 of you just have to recall what the two of them testified to. Okay.

The trial court here reasonably denied the jury's request, when it occurred just three hours into deliberations and where transcripts did not yet exist. Moreover, the trial court did not completely and unequivocally foreclose the possibility of later review. Additionally, had the trial court somehow reread the requested testimony, it would not likely have altered the verdict.

The requested testimony was of Marquis Walker, one of the victims of the shooting, and John Stevenson, one of the participants in the shooting. Walker had a clear view of defendant and positively and unequivocally identified him as the shooter on several occasions. Stevenson identified defendant as the planner of the robbery, the only participant who had a gun, and as the

shooter. We do not find that the specific testimony requested here by the jurors would have cast doubt on the logic of the verdict. See *People v Martin*, 77 Mich App 76, 78; 257 NW2d 668 (1977).

Defendant next takes exception to the substitution of another judge on the last day of trial. Defendant did not, however, object to this substitution, nor has he articulated any error regarding the substitute judge's performance, or indicate how the substitute judge's appearance prejudiced him. "Defendant may not leave it to this Court to search for a factual basis to sustain or reject his position." *People v Traylor*, 245 Mich App 460, 464; 628 NW2d 120 (2001) (citation omitted).

Moreover, defendant has provided no authority suggesting that where the substitution of a judge occurs after all of the proofs have been closed, closing arguments have been given, the jury has completed deliberations, and the substitute judge's sole role is to accept the jury's verdict on the record, prejudice occurs. Instead, "[a]s a rule, a judge cannot finish the performance of a duty already entered upon by his predecessor where that duty involves the exercise of judgment and the application of legal knowledge to, and judicial deliberation of, facts known only to the predecessor." *People v McCline*, 442 Mich 127, 133; 499 NW2d 341, 343 (1993), quoting *Commonwealth v Thompson*, 328 Pa 27; 195 A 115; 114 ALR 432 (1937). The acceptance of a jury verdict on the record involves no exercise of judgment, application of legal knowledge or judicial deliberation of facts known only to the judge presiding at trial. This allegation of error is without merit.

Defendant next argues that counsel was ineffective for failing to object to the prosecutor and trial court's misconduct, as alleged in his prior claims of error. We disagree.

To preserve a claim of ineffective assistance of trial counsel, a defendant must file a motion for a new trial or for a *Ginther*[2] hearing in the lower court. See *People v Petri*, 279 Mich App 407, 410; 760 NW2d 882 (2008). Where a defendant does neither, this Court's review of unpreserved claims of ineffective assistance of counsel is limited to mistakes apparent on the record. *People v Unger*, 278 Mich App 210, 253; 749 NW2d 272 (2008).

The burdens on a defendant to establish a claim of ineffective assistance of counsel are high:

> Effective assistance of counsel is presumed and defendant bears the burden of proving otherwise. To succeed on a claim of ineffective assistance of counsel, the defendant must show that, but for an error by counsel, the result of the proceedings would have been different, and that the proceedings were fundamentally unfair or unreliable. The defendant bears a heavy burden on these points. Defendant must overcome a strong presumption that counsel's performance constituted sound trial strategy. This Court will not substitute its judgment for that of counsel regarding matters of trial strategy, nor will it assess

---

[2] *People v Ginther*, 390 Mich 436; 212 NW2d 922 (1973).

counsel's competence with the benefit of hindsight. [*Petri*, 279 Mich App at 410-411 (citation and quotation marks omitted).]

Defendants' claims of ineffective assistance of counsel are premised entirely on his prior allegations of error. However, as previously discussed, we find none of defendant's claims of error to have merit. Counsel is not ineffective for failing to make futile objections. *People v Milstead*, 250 Mich App 391, 401; 648 NW2d 648 (2002). And, as also previously discussed, there was overwhelming evidence of defendant's guilt, predominantly from the victims of the shooting. Defendant has thus failed to demonstrate that but for any error by counsel, the result of the proceeding would have been different. *Petri*, 279 Mich App at 410-411.

Defendant's next argument is that defects and discrepancies placed on the record by the trial court at defendant's sentencing have resulted in him being improperly being classified and housed in the Michigan Department of Corrections. Defendant specifically states that the trial court's following statements were inaccurate:

Well I sat through the trial and I do believe—my memory is correct—that one of the co-defendants who took part in this homicide, testified that you were the individual that went in guns-blazing.

\*\*\*

But you have every right to you know—deny the allegations.

Defendant's claim that the above is contrary to the record is based on his own statement that he did not shoot anyone. However, the trial court is correct that defendant's co-defendant, John Stevenson, testified that defendant went into Walker's apartment and shot the victims in this case. The trial court's statements were thus not inaccurate.

Defendant next contends that the effect of cumulative errors that occurred at trial deprived him of a fair trial. We disagree.

"This Court reviews a cumulative-error argument to determine if the combination of alleged errors denied the defendant a fair trial." *People v Hill*, 257 Mich App 126, 152; 667 NW2d 78 (2003). "The cumulative effect of several errors can constitute sufficient prejudice to warrant reversal even when any one of the errors alone would not merit reversal." *Dobek*, 274 Mich App at 106. Where, as here, we have found no error, there can be no cumulative errors requiring reversal.

Finally, defendant asserts that he was denied the effective assistance of appellate counsel because appellate counsel may have opened a door to jurisdiction that otherwise did not exist. This Court had jurisdiction over defendant's appeal. Thus, this argument is without basis.

To the extent that defendant is attempting to suggest that counsel was ineffective for failing to raise the issues that defendant raised in his own standard 4 brief, "the test for ineffective assistance of appellate counsel is the same as that applicable to a claim of ineffective assistance of trial counsel." *People v Uphaus*, 278 Mich App 174, 186; 748 NW2d 899 (2008). To show ineffective assistance of appellate counsel it must be shown that appellate counsel's

decision not to raise certain issues on appeal "fell below an objective standard of reasonableness and prejudiced [defendant's] appeal." *Id*. Because we have found none of the issues raised in defendant's standard 4 brief to be meritorious, defendant has failed to establish that appellate counsel's failure to raise these issues on defendant's behalf prejudiced defendant.

## II. DOCKET NO. 328256 (DEFENDANT STOUDEMIRE)

## A. SUFFICIENCY OF THE EVIDENCE

Defendant Stoudemire first argues that the evidence at trial was insufficient to support his convictions. We disagree. We review a challenge to the sufficiency of the evidence de novo. *People v Henderson*, 306 Mich App 1, 8-9; 854 NW2d 234 (2014). We must examine the evidence in a light most favorable to the prosecution, resolving all evidentiary conflicts in its favor, to determine whether a rational trier of fact could have found that the essential elements of the charged crimes were proved beyond reasonable doubt. *People v Dunigan*, 299 Mich App 579, 582; 831 NW2d 243 (2013). "Circumstantial evidence and reasonable inferences arising therefrom may constitute proof of the elements of [a] crime." *Bennett*, 290 Mich App at 472. We defer to the jury's assessment of the credibility of witnesses. *Henderson*, 306 Mich App at 9.

As set forth in *Carines*, 460 Mich at 758-759,

> [t]he elements of felony murder are: (1) the killing of a human being, (2) with the intent to kill, do great bodily harm, or to create a very high risk of death or great bodily harm with knowledge that death or great bodily harm was the probable result [i.e., malice], (3) while committing, attempting to commit, or assisting in the commission of an any of the felonies specifically enumerated in [MCL 750.316]. [Citation omitted; first alteration in original.]

First-degree home invasion is an enumerated felony. MCL 750.316(1)(b). Malice may be inferred from evidence "that the defendant intentionally set in motion a force likely to cause death or great bodily harm." *Id*. at 759. A jury may also infer malice "from the use of a deadly weapon." *Id*.

MCL 750.110a(2) sets out the elements of the crime of first-degree home invasion. The statute provides:

> A person who breaks and enters a dwelling with intent to commit a felony, larceny, or assault in the dwelling, a person who enters a dwelling without permission with intent to commit a felony, larceny, or assault in the dwelling, or a person who breaks and enters a dwelling or enters a dwelling without permission and, at any time while he or she is entering, present in, or exiting the dwelling, commits a felony, larceny, or assault is guilty of home invasion in the first degree if at any time while the person is entering, present in, or exiting the dwelling either of the following circumstances exists:
>
> (a) The person is armed with a dangerous weapon.
>
> (b) Another person is lawfully present in the dwelling.

-12-

The elements of assault with intent to commit murder are (1) an assault, (2) with an actual intent to kill, (3) which, if successful, would make the killing murder. *People v Barclay*, 208 Mich App 670, 674; 528 NW2d 842 (1995). The specific intent to kill may be proven by inferences from any facts in evidence, including circumstantial ones such as the use of a dangerous weapon. *Id.*; *Henderson*, 306 Mich App at 11; *People v DeLisle*, 202 Mich App 658, 672; 509 NW2d 885 (1993). Moreover, "because it can be difficult to prove a defendant's state of mind on issues such as knowledge and intent, minimal circumstantial evidence will suffice to establish the defendant's state of mind . . . ." *People v Kanaan*, 278 Mich App 594, 622; 751 NW2d 57 (2008).

Initially, sufficient evidence supported Stoudemire's identity as one of the persons who participated in the home invasion at Walker's apartment. Wilson testified that Stoudemire participated in the pre-offense discussions and planning of the robbery. Stevenson similarly testified that Stoudemire was part of the robbery discussions, and that "we was all in." Wilson testified that during these discussions, Brantley took Stoudemire into the bathroom to talk with him alone. Afterward, the three men, Brantley, Stoudemire, and Stevenson, left Wilson's apartment to obtain marijuana and cigarillos from the apartment upstairs. Wilson also testified that Stoudemire later told him that he entered Walker's apartment after the shooting. Walker and Vallis also both indicated that three men entered the apartment. In addition, Detective White testified that after Stoudemire was arrested and advised of his rights, Stoudemire identified Brantley as the individual who fired a handgun into the apartment and shot at the individuals in the apartment. The evidence was sufficient to support the jury's finding that Stoudemire was an active participant in the home invasion.

With respect to the assault and murder convictions, Stoudemire was charged under an aiding and abetting theory. As explained in *Carines*, 460 Mich at 757-758:

> To support a finding that a defendant aided and abetted a crime, the prosecutor must show that (1) the crime charged was committed by the defendant or some other person, (2) the defendant performed acts or gave encouragement that assisted the commission of the crime, and (3) the defendant intended the commission of the crime or had knowledge that the principal intended its commission at the time he gave aid and encouragement. An aider and abettor's state of mind may be inferred from all the facts and circumstances. Factors that may be considered include a close association between the defendant and the principal, the defendant's participation in the planning or execution of the crime, and evidence of flight after the crime. [Citation omitted.]

With respect to felony murder, "[a] jury may infer that the defendant aided and abetted the killing by participating in the underlying offense." *People v Bulls*, 262 Mich App 618, 625; 687 NW2d 159 (2004).

As indicated previously, sufficient evidence established Stoudemire's involvement in the planning of the robbery, and his active participation in the home invasion into Walker's apartment. Wilson also testified that during the group's discussion of robbing the apartment upstairs, Brantley asked Wilson, in Stoudemire's presence, to help him kill someone, but Wilson refused. Stevenson testified that Brantley openly displayed a firearm on his lap while the group

-13-

discussed robbing Walker. The jury could reasonably find from this evidence that Stoudemire participated in the offense with knowledge that Brantley was armed with a firearm and was prepared to kill someone, and thus that Stoudemire participated in the offense with knowledge of Brantley's intent to kill. The fact that Stoudemire entered the apartment and searched it after Brantley shot all three occupants further supports a finding that Stoudemire, in addition to performing acts or providing encouragement that assisted in the commission of the offenses, either intended the commission of these crimes or knew that Brantley intended their commission at the time Stoudemire gave aid and encouragement. Accordingly, the evidence was sufficient to support Stoudemire's convictions of assault with intent to commit murder and felony-murder.

## B. PROSECUTOR'S CONDUCT

Defendant Stoudemire also seeks a new trial on the ground that the prosecutor improperly expressed her personal belief in Stoudemire's guilt, and impermissibly bolstered Stevenson's credibility by stating during her closing argument that Stevenson pleaded guilty to second-degree murder "because what he did is what Kimani Stoudemire did."

Questions of prosecutorial misconduct are decided on a case-by-case basis, and a prosecutor's remarks must be evaluated in context. *People v Roscoe*, 303 Mich App 633, 648; 846 NW2d 402 (2014). "Prosecutors have discretion on how to argue the facts and reasonable inferences arising therefrom, and are not limited to presenting their arguments in the blandest terms possible." *People v Meissner*, 294 Mich App 438, 456; 812 NW2d 37 (2011). A prosecutor is free to argue from the facts that a witness should be believed. *People v McGhee*, 268 Mich App 600, 630; 709 NW2d 595 (2005). Thus, a prosecutor may "comment on his own witnesses' credibility during closing argument, especially when there is conflicting evidence and the question of the defendant's guilt depends on which witnesses the jury believes." *People v Thomas*, 260 Mich App 450, 455; 678 NW2d 631 (2004). However, a prosecutor is not permitted to vouch for the credibility of a witness by implying that he or she possesses "special knowledge" of the witness's truthfulness. *People v Seals*, 285 Mich App 1, 22; 776 NW2d 314 (2009).

Stoudemire challenges the following closing remarks by the prosecutor, which were made after summarizing Stevenson's testimony:

> And that's what happened in this case. And based on that and what happened, John Stevenson is going to prison for murder, for him running in that house looking for something, it not being there, and coming out. John Stevenson is going to prison for murder.

> He had an attorney. He pled to a count of murder because what he did is what Kimani Stoudemire did. He went up there knowing there was going to be a robbery. He didn't have a gun. He runs in. He runs out. He committed a home invasion . . . .

The prosecutor's remarks did not suggest that she had special knowledge of Stoudemire's guilt. The prosecutor commented on the evidence. She argued that, like Stevenson, what Stoudemire did constituted murder under an aiding and abetting theory, even though Stoudemire

-14-

did not himself commit the murder.  The prosecutor's later statements were more specific concerning this point.  Stoudemire has not demonstrated a plain error.

We affirm defendants' convictions, but remand for correction of defendant Brantley's presentence investigation and judgment of sentence to specify a single conviction of first-degree murder supported by two different theories.  We do not retain jurisdiction.


/s/ Deborah A. Servitto
/s/ Cynthia Diane Stephens
/s/ Amy Ronayne Krause